```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
TALKDESK, INC.,                                                  :
                                                                 :
                              Plaintiff,                         :
                                                                 :    23 Civ. 9543 (JPC)
              -v-                                                :
                                                                 :    OPINION AND
UNIQUE TRAVEL CORP.,                                             :    ORDER
                                                                 :
                              Defendant.                         :
                                                                 :
-----------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

Plaintiff Talkdesk, Inc. ("Talkdesk") brings this commercial contract action against Defendant Unique Travel Corp. ("Unique"). Talkdesk alleges that Unique repudiated their Master Subscription Agreement ("MSA") and related documents by terminating subscription payments related to the procurement of call center services. Unique moves to dismiss Talkdesk's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For reasons that follow, the Court denies Unique's motion to dismiss Talkdesk's claims for breach of contract in Count I and for breach of the implied covenant of good faith and fair dealing in Count II. The Court declines to exercise its discretionary jurisdiction over Talkdesk's declaratory judgment claim in Count III, finding it to be duplicative of the breach of contract claim, and thus dismisses Count III.

## I. Background[1]

**A. Facts**

Talkdesk provides cloud-based software-as-a-service platforms for call center operations. Compl. ¶ 5. Talkdesk's services can be tailored to a customer's business depending on its needs, infrastructure, experience, and requirements. *Id.* On December 30, 2021, Talkdesk and Unique executed the MSA, under which Unique subscribed to specified Talkdesk products at preset usage rates for a period of thirty-six months and further contracted for certain professional services to aid in setting up the Talkdesk system. *Id.* ¶¶ 6-7; *see* Agreement at 1-11 ("MSA"). Along with

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from Talkdesk's Complaint, Dkt. 1 ("Compl."). *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor"). The Court also draws on the July 21, 2023 Termination Letter, Dkt. 18, Exh. A ("Termination Letter"), and the parties' agreement, Dkt. 18, Exh. B ("Agreement"), which are attached to Unique's motion.

The parties disagree on whether the Termination Letter is incorporated into the Complaint by reference and thus may be considered at this stage. *Compare* Dkt. 19 ("Opposition") at 9-11, *with* Dkt. 20 ("Reply") at 2-3. "For purposes of [Rule 12(b)(6)], the complaint is deemed to include any written instrument . . . incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted). The Court further may consider "any document not attached or incorporated by reference if 'the complaint relies heavily upon its terms and effect, [rendering] the document integral to the complaint.'" *Williams v. Citibank, N.A.*, 565 F. Supp. 2d 523, 527 (S.D.N.Y. 2008) (quoting *Chambers*, 282 F.3d at 152 (alteration in original)). Contrary to Talkdesk's characterization, the Complaint references the Termination Letter extensively—indeed, Talkdesk plainly relied on "the terms and effect of [that] document in drafting the complaint," *Chambers*, 282 F.3d at 153, as it is key to Talkdesk's breach of contract claim. *See* Compl. ¶¶ 19-26. Given these circumstances, Talkdesk did not lack notice of the information contained in the Termination Letter, *see Chambers*, 282 F.3d at 153, and the document is properly considered incorporated by reference into the Complaint. That of course does not mean that the Court accepts as true Unique's descriptions of discussions among representatives of the parties as recited in that letter.

the MSA, two Order Forms ("2021 Order Forms") and a Statement of Work ("2021 SOW") comprise the Agreement. Compl. ¶ 6.[2]

Several provisions of the Agreement are relevant to Unique's motion. Section 6 of the MSA outlines the parties' payment obligations, including the terms governing fees, payment, and an acceleration clause allowing Talkdesk to accelerate any remaining payments in the event Unique is thirty days or more overdue in payment. *See* MSA § 6. The MSA also obligates Unique to pay certain fees: specific license fees are to be identified in the Order Form, *id.* § 6.1, professional services fees are to be identified in the SOW, *id.* § 6.2, and usage fees are to be billed by Talkdesk, *id.* § 6.3. Section 13 of the MSA governs the term and termination of the Agreement, with Section 13.3.1 providing:

> Either party may terminate the Service Term in the event that: (a) the other party materially breaches this Agreement and does not cure such breach within thirty (30) days following its receipt of written notice of such breach; or (b) the other party has become insolvent [or] does not pay its debts as they become due . . . .

*Id.* § 13.3.1.

Following the execution of the Agreement, Talkdesk and Unique "began work to implement the contracted-for Talkdesk solution in January 2022." Compl. ¶ 14. The completion of implementation was delayed several times throughout 2022, however, "each at the request of Unique," *id.*, due to Unique's "out of scope" requests and infrastructure problems, *id.* ¶ 15.[3] On

---

[2] The MSA defines "Order Form" as "any order form signed by both parties identifying the Services to be made available by Talkdesk pursuant to this Agreement, which may detail, among other things, the number of Authorized Users." MSA § 1.13. SOW is defined as "a document governed by this Agreement describing any Professional Services, inclusive of Professional Services rates and charges." *Id.* § 1.18.

[3] Unique recounts a different story of the cause of these delays, pointing to contentions it made in the Termination Letter. *See* Dkt. 18-4 ("Motion") at 3-4. But at this procedural posture, the Court must "assume as true all the material allegations of the . . . complaint." *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 85 n.1 (2d Cir. 2011).

3

March 24, 2023, with TalkDesk and Unique disputing which was to blame for the implementation delays, the parties executed a new 2023 Statement of Work ("2023 SOW") and a new Order Form ("2023 Order Form"), whose combined effect was to "restart the clock" on the original thirty-six-month term.  *Id.* ¶ 16.  The 2023 SOW and 2023 Order Form "became part of the Agreement, including the MSA and [2021 SOW]."  *Id.*  As alleged, although the parties targeted a May 2023 implementation completion date following execution of the 2023 SOW and the 2023 Order Form, Unique refused to allow Talkdesk to complete its work and failed to timely perform its obligations under the Agreement.  *Id.* ¶ 18.

On July 21, 2023, Unique sent Talkdesk the Termination Letter.  *Id.* ¶ 19; *see* Termination Letter.  According to Talkdesk, through the Termination Letter, Unique "purport[ed] to terminate the Agreement due to alleged material breaches and misrepresentations by Talkdesk."  Compl. ¶ 19.  In the Termination Letter, Unique cited failures with Talkdesk's system and Talkdesk's inability to remedy identified issues.  *See* Termination Letter at 2-3; *see also* Compl. ¶¶ 19-21.  The Termination Letter advised that "Unique is prepared to resolve this matter within thirty (30) days of the date hereof through a mutual termination of the parties' contractual relationship, with no continuing obligations, and a refund of the amounts paid by Unique to Talkdesk."  Termination Letter at 3-4.[4]  Otherwise, Unique expressed its intent "to take legal action to enforce its rights and recover all available damages and other legal and equitable relief, including terminating and/or rescinding the parties' relationship, including the Agreement."  *Id.* at 3.  After receiving the

---

[4] The parties disagree on whether this language in the Termination Letter satisfied the MSA's provision allowing a party to terminate the Agreement after "the other party materially breaches [the MSA] and does not cure such breach within thirty (30) days following its receipt of written notice of such breach."  MSA § 13.3.1; *compare* Motion at 12-13; Reply at 3, *with* Opposition at 11-12.  Whether the Termination Letter satisfied the MSA's thirty-day notice requirement, and thus undermines one of Talkdesk's breach of contract theories, raises an issue of fact that is properly addressed at summary judgment or trial.

Termination Letter, Talkdesk asserted that Unique had breached the Agreement and invoked the MSA's acceleration clause, rendering the full anticipated value of the contract due immediately. Compl. ¶ 26; *see also id.* ¶¶ 23 (listing five ways Unique allegedly "materially breached the Agreement when it purported to terminate the Agreement"), 26 (alleging that the Termination Letter "constitutes a complete repudiation of the Agreement, which itself is another material breach"). Unique has not made any payments since the Termination Letter was sent. *Id.* ¶ 26.

**B.   Procedural History**

Talkdesk filed its Complaint on October 31, 2023. Dkt. 1. The Complaint pleads three counts. Count I asserts a claim for breach of contract. Compl. ¶¶ 27-32. Count II asserts a claim for breach of the implied covenant of good faith and fair dealing. *Id.* ¶¶ 33-36. Count III "seeks a declaration that Unique has not validly terminated the Agreement, that the Agreement remains valid and enforceable against Unique, that the acceleration clause has been properly invoked, and that Unique is liable to Talkdesk for at least the full amount of fees and costs owed and reasonably anticipated under the full term of the Agreement, of at least $1,944,140.34 plus interest plus attorneys' fees and costs and court costs, in a specific amount to be determined at trial." *Id.* ¶¶ 37-40.

On March 26, 2024, Unique moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Dkt. 18. Talkdesk filed its opposition on April 9, 2024. Dkt. 19. Unique filed its reply on April 16, 2024. Dkt. 20. The Court has jurisdiction under 28 U.S.C. § 1332(a)(2).

## II.   Discussion

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

5

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A complaint's "[f]actual allegations must be enough to raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This standard does not demand "detailed factual allegations," *id.*, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678.

A.   **Breach of Contract**

The Complaint plausibly pleads a claim for breach of contract. The MSA is governed by New York law. MSA § 14.2. To state a claim for breach of contract under New York law, a complaint must allege: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of [the] defendant to perform; and (iv) damages." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (internal quotation marks omitted).

The Complaint plausibly alleges each of these elements. First, the Complaint alleges that Talkdesk and Unique executed the MSA. Compl. ¶ 6. Second, the Complaint pleads that Talkdesk "began work to implement the contracted-for Talkdesk solution in January 2022," made "steady progress" towards the completion of implementation despite delays, and "successfully delivered" an additional feature "as the parties were readying to complete implementation" of the contracted-for solution. *Id.* ¶¶ 14-15. The Complaint also alleges that the parties agreed in the 2023 Order Form that Talkdesk already had performed certain professional services under the 2021 Order Form and 2021 SOW. *Id.* ¶ 17. Although Unique responds by telling a different story about Talkdesk's performance, at this stage the Court "must accept as true all allegations in the complaint

6

and draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008) (internal quotation marks omitted).

Third, Talkdesk's theory of breach[5] is that "Unique materially breached the Agreement when it failed and/or refused to timely perform its obligations under the Agreement, including payment and technical obligations." Compl. ¶ 30. The Complaint alleges that Unique repudiated the Agreement, including the MSA, through the Termination Letter and through the subsequent failure to follow through on the required payments for Talkdesk's services. *Id.* ¶¶ 18-26. The Complaint thus plausibly pleads an anticipatory breach, namely Unique's refusal to perform under the MSA as expressed in the Termination Letter, which alleges "'positive and unequivocal' expression of intent to breach by the promisor 'before the time for performance.'" *Red Fort Cap., Inc. v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456, 469 (S.D.N.Y. 2019) (quoting *Princes Point LLC v. Muss Dev. L.L.C.*, 87 N.E.3d 121, 124-25 (N.Y. 2017)). Under New York law, "[w]hen confronted with an anticipatory repudiation, the non-repudiating party . . . may . . . elect to treat the repudiation as an anticipatory breach and seek damages for breach of contract, thereby terminating the contractual relation between the parties." *Lucente v. Int'l Business Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (collecting cases). The Complaint thus plausibly alleges the third element for a breach of contract claim. Lastly, the Complaint plausibly pleads damages arising

---

[5] Although the Complaint pleads multiple breach of contract theories, Talkdesk need only plausibly plead one theory for the claim to survive dismissal. *See Martin v. Bottom Line Concepts, LLC*, 723 F. Supp. 3d 270, 283 n.6 (S.D.N.Y. 2024) ("A cause of action that is based on one set of facts but that contains multiple, alternative legal theories supporting relief is still just one 'claim.'" (internal quotation marks omitted)). The Court therefore does not address herein whether the Complaint also adequately pleads a breach theory based on Unique terminating the Agreement without due cause and without following the MSA's notice and termination provisions. *See* Compl. ¶ 31; Motion at 11-13; Reply at 2-4.

from Unique's non-payment of nearly $2 million in accelerated payments allegedly due under the Agreement.  Compl. ¶¶ 26, 32.

Unique's challenges to the sufficiency of Talkdesk's pleading of breach of contract are unavailing.  Unique argues that the Complaint lacks the specificity required for a breach of contract claim under New York law, as it fails to identify the specific provisions breached.  *See* Motion at 9-11.  But far from "conclusory," the Complaint identifies specific contractual provisions governing payment and termination, *see* Compl. ¶¶ 6-13, and pleads that Unique did not comply with those provisions, including by identifying several ways that Unique allegedly breached the MSA's terms, *id.* ¶ 23.  These allegations give Unique "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Nor do the cases Unique cites support any heightened pleading requirement in New York for breach of contract that is more demanding than what is discussed above.  *See* Motion at 10.  Rather, those cases concern situations where the agreements lacked a basis for the asserted claims.  *See, e.g.*, *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494-97 (S.D.N.Y. 2002) (dismissing a breach of contract claim because the contractual language did not impose the duties that the plaintiffs claimed were breached).

In sum, Talkdesk has, at a minimum, pleaded "an arguable claim under the contract." *Hermant Patel M.D., P.C. v. Bandikatla*, No. 18 Civ. 10227 (LGS), 2019 WL 6619344, at *2 (S.D.N.Y. Dec. 5, 2019).  Because the Complaint is sufficiently detailed to "allow[] the court to draw the reasonable inference that the defendant is liable for the" breach of contract claim, *Iqbal*, 556 U.S. at 678, Unique's motion to dismiss Talkdesk's breach of contract claim is denied.

## B.  Breach of the Implied Covenant of Good Faith and Fair Dealing

The Court also denies Unique's motion to dismiss Talkdesk's claim in Count II for breach of the implied covenant of good faith and fair dealing.  *See* Motion at 13-17.  "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002).  "To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must establish the following: '(1) defendant must owe plaintiff a duty to act in good faith and conduct fair dealing; (2) defendant must breach that duty; and (3) the breach of duty must proximately cause plaintiff's damages.'" *Schonfeld v. Wells Fargo Bank, N.A.*, No. 15 Civ. 1425 (MAD), 2017 WL 4326057, at *5 (N.D.N.Y. Sept. 27, 2017) (quoting *Washington v. Kellwood Co.*, No. 05 Civ. 10034 (DAB), 2009 WL 855652, at *6 (S.D.N.Y. Mar. 24, 2009)).

Unique argues that Talkdesk's breach of the implied covenant claim should be dismissed as duplicative of its breach of contract claim.  Motion at 13.  Under New York law, "[g]enerally, a claim for breach of an implied covenant of good faith and fair dealing does not provide a cause of action separate from a breach of contract claim" because a "'breach of that duty is merely a breach of the underlying contract.'"  *Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 405 (E.D.N.Y. 2012) (quoting *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002)).  Therefore, "when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant."  *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013); *see also Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 555 (S.D.N.Y. 2014).

But here, Talkdesk's theory for breach of the implied duty does not "clearly rest on the same alleg[ations]" as its breach of contract claim.  *Cruz*, 720 F.3d at 125.  "[A] claim for breach

9

of the implied covenant of good faith and fair dealing is not duplicative when the claim depends on facts in addition to those that might support a breach of contract claim." *Advanced Oxygen Therapy Inc. v. Orthoserve Inc.*, 572 F. Supp. 3d 26, 35 (S.D.N.Y. 2021) (internal quotation marks omitted). Talkdesk claims that Unique breached the implied covenant of good faith and fair dealing by, *inter alia*, "causing Talkdesk to undertake additional work to attempt to meet Unique's various out of scope, extra-contractual demands over a period of 18 months even though Unique knew that the out of scope functions and features it demanded were not required by the contract and that it had no intention of fulfilling its contract obligations to Talkdesk." Compl. ¶ 35.[6]

This theory for breach of the implied duty arises from factual allegations regarding Unique's conduct during implementation of Talkdesk's platform, rather than the termination of the Agreement. *See id.* ¶¶ 14-15. As pleaded, this conduct "depends on facts in addition to those that might support a breach of contract claim," namely what allegedly occurred during implementation of Talkdesk's software onto Unique's systems, including Unique's out-of-scope demands. *Advanced Oxygen Therapy*, 572 F. Supp. 3d at 35. As these factual allegations are distinct from those supporting a breach of contract claim based on repudiation and non-payment, Count II cannot be dismissed as duplicative at this stage. *See Endemann v. Liberty Ins. Corp.*, 390 F. Supp. 3d 362, 379 (N.D.N.Y. 2019) (allowing both a breach of contract claim and a breach of the implied covenant claim to proceed "[b]ecause the breach of the implied covenant of good faith and fair dealing claim pleads conduct by Defendant different than alleged in the breach of contract

---

[6] As with its breach of contract claim, Talkdesk pleads multiple theories for the breach of the implied covenant. *See* Compl. ¶ 35. The Court only addresses the theory quoted above in resolving the motion to dismiss, as this theory is adequately pleaded to survive dismissal when viewed in tandem with the theory for breach of contract addressed above. Moreover, because this theory does not sound in fraud, but concerns whether Unique caused Talkdesk to conduct out-of-scope work, the heightened pleading requirements of Rule 9(b) do not apply to it. *See* Motion at 15-16; Reply at 6-8.

claim, and because Plaintiff may be entitled to different relief than allowed under a breach of contract claim").

C.  **Declaratory Relief**

Finally, Unique argues that the Court should decline to exercise its discretionary jurisdiction over Talkdesk's claim for declaratory relief in Count III.  Motion at 17-20.  The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, "provides that '[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 92 (2d Cir. 2023) (alterations in original) (quoting 28 U.S.C. § 2201(a)).  Given its permissive language that a court *may* declare rights under its auspices, the DJA "confers a discretion on the courts rather than an absolute right upon the litigant." *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.*, 676 F. Supp. 3d 233, 254 (S.D.N.Y. 2023) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 241 (1952)).  Consequently, the Second Circuit "ha[s] consistently interpreted this permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." *Admiral Ins. Co.*, 57 F.4th at 96 (internal quotation marks omitted).  The Supreme Court has similarly "acknowledg[ed] . . . the unique breadth of [a federal court's] discretion to decline to enter a declaratory judgment." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995).

In *Admiral Insurance Company*, the Second Circuit advised that district courts should consider the following criteria "to the extent they are relevant in a particular case" in deciding whether to exercise discretion to decline jurisdiction under the DJA, 57 F.4th at 99 (internal quotation marks omitted):

>(1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

*Id.* at 99-100 (alterations, citation, and internal quotation marks omitted). And "[i]nherent in district courts' broad discretion to decline jurisdiction under the DJA is a similarly broad discretion to weigh the[se] factors . . . . Thus, no one factor is sufficient, by itself, to mandate that a district court exercise—or decline to exercise—its jurisdiction to issue a declaratory judgment." *Id.* at 100 (alteration, citation, and internal quotation marks omitted). "[T]hese factors are non-exhaustive, with district courts retaining wide latitude to address other factors as relevant to the ultimate question of whether the normal principle that federal courts should adjudicate claims over which they have jurisdiction should yield to considerations of practicality and wise judicial administration in a particular case." *Id.* (alterations, citation, and internal quotation marks omitted).

Unique argues that the Court should decline to exercise jurisdiction over Talkdesk's claim for declaratory relief because it is duplicative of the breach of contract claim. Motion at 17-20. "[C]ourts routinely dismiss requests for declaratory judgment when the parties' rights will be adjudicated through a breach of contract claim in the same action." *Com. Lubricants, LLC v. Safety-Kleen Sys., Inc.*, No. 14 Civ. 7483 (MKB), 2017 WL 3432073, at *17 (E.D.N.Y. Aug. 8, 2017) (collecting cases). Here, Talkdesk seeks a declaration that Unique did not validly terminate the Agreement, that the Agreement is valid and enforceable, that the acceleration clause is properly invoked, and that Unique is liable to Talkdesk for damages under the Agreement. Compl. ¶ 40.

Such a declaration is a rehash of the basic elements of one of Talkdesk's theories for its breach of contract claim, which, as discussed above, survives dismissal. Granting Talkdesk this remedy "would serve no purpose" because "[t]he claim for declaratory judgment would not clarify any uncertainty in the parties' legal relations that would otherwise remain unresolved as part of the breach of contract claim." *Optanix, Inc. v. Alorica Inc.*, No. 20 Civ. 9660 (GHW), 2021 WL 2810060, at *4 (S.D.N.Y. July 6, 2021) (collecting cases which have dismissed declaratory judgment claims as duplicative). In addition, given the damages available through the breach of contract claim, there exists a "better or more effective remedy" at hand. *Admiral Ins. Co.*, 57 F.4th at 100 (internal quotation marks omitted).

Talkdesk insists that declaratory relief "will clarify the parties' rights and obligations under the MSA and offer relief from uncertainty regarding the parties' continuing obligations." Opposition at 16. But given Unique's alleged repudiation and Talkdesk's treatment of that repudiation as a breach of contract, the only remaining clarification that can be given is a determination of breach of contact liability and damages. None of the relevant factors under *Admiral Insurance Company* weigh in favor of exercising discretionary jurisdiction in these circumstances. *See Admiral Ins. Co.*, 57 F.4th at 99-100. The Court therefore declines to exercise jurisdiction over Talkdesk's claim for declaratory relief and dismisses Count III without prejudice.

## III.  Conclusion

For the foregoing reasons, the Court denies Unique's motion to dismiss Counts I and II, and grants the motion to dismiss Count III, which is dismissed without prejudice.  The Clerk of Court is respectfully directed to close the motion at Docket Number 18.

SO ORDERED.

Dated: November 27, 2024
       New York, New York

_____
JOHN P. CRONAN
United States District Judge